UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Arthur Lee Warren,  #271600, | ) C/A No. 6:12-3187-DCN-KFM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) **REPORT AND** |
| William R. Byars, Jr., Director; | ) **RECOMMENDATION** |
| Gregory T. Knowlin, Warden; | ) |
| Major Kenneth Sharpe; | ) |
| DHO Captain Angela Brown; | ) |
| Officer George H. Roark; | ) |
| Captain Kevin Coleman; | ) |
| Captain Jannie Kelly; | ) |
| Captain Richard Chavlva; | ) |
| Captain Lee Pack; | ) |
| Captain Mack; | ) |
| Lieutenant Cedric Driffin; | ) |
| Lieutenant Tomlin; | ) |
| Lieutenant Larry; | ) |
| Sergeant Jones; | ) |
| Sergeant Cooper; | ) |
| Officer Parker; | ) |
| Officer Mattias; | ) |
| Sergeant Edward Staggers; | ) |
| Sergeant Natoshia Williams; | ) |
| Cpl Franklin Smith; | ) |
| Officer Anton Hunter; | ) |
| Officer Jerrol Lewis, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

Arthur Lee Warren ("Plaintiff"), a self-represented state prisoner, brings this

action pursuant to 42 U.S.C. § 1983.  This matter is before the court pursuant to 28 U.S.C.

§ 636(b) and Local Civil Rule 73.02(B)(2) DSC.  Plaintiff is currently an inmate at Ridgeland

Correctional Institution, a facility of the South Carolina Department of Corrections, and files

this action *in forma pauperis* under 28 U.S.C. § 1915.   The complaint names state

employees as defendants.[1]  Having reviewed the complaint in accordance with applicable law, the undersigned concludes that it should be summarily dismissed as to Defendants Byars,  Sharpe, Roark, Kelly, Chavlva, Pack, Mack, Driffin, Tomlin, Larry, Jones, Cooper, Parker, Mattias, Staggers, Williams, Smith, Hunter, and Lewis.  In a separately docketed order, the undersigned has authorized service against defendants Knowlin, Brown, and Coleman.

<u>*Pro Se* and *In Forma Pauperis* Review</u>

The complaint *sub judice* has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without paying the administrative costs of proceeding with the lawsuit.  To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  A finding of frivolousness can be made where the complaint "lacks an arguable basis either in law or in fact."  *Denton v. Hernandez*, 504 U.S. 25, 31 (1992).  Hence, under § 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte*.  *Neitzke v. Williams*, 490 U.S. 319 (1989).

The court may dismiss a claim as "factually frivolous" under § 1915(e) if the facts alleged are clearly baseless.  *Denton v. Hernandez*, 504 U.S. at 31.  In making this

---

[1]  Title 28 U.S.C. § 1915A(a) requires review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."

determination, the court is not bound to accept without question the truth of the plaintiff's allegations, but rather need only weigh the plaintiff's factual allegations in his favor. *Id.*

This court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Even under this less stringent standard, however, the *pro se* complaint is subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a petition to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), construct the petitioner's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

<u>Facts Presented</u>

The events underlying the instant complaint arose while Plaintiff was a prisoner at Turbeville Correctional Institution ("TCI"), and Defendants, with the exception of Director William Byars, are employed at TCI. The complaint sets forth claims against Defendants, as follows.

(1) In his role as spokesman for his unit at TCI, Plaintiff brought complaints to Defendant Knowlin, the warden at TCI, but Knowlin ignored these complaints.

(2) Defendant Roark, a correctional officer at TCI, was allowing certain inmates to break into the cells of other inmates.  Upon Plaintiff informing "higher staff" about Roark's actions, Roark brought false disciplinary charges against Plaintiff.

(3) Plaintiff reported Defendant Roark's actions to Defendants Sharpe, Mack, Coleman, and Kelly.

(4) Defendant Brown denied Plaintiff due process in the conduct of his disciplinary hearing by (i) refusing to call his witnesses; (ii) failing to provide a meaningful explanation of the finding of guilt; and (iii) failing to provide any evidence against Plaintiff. *See Wolff v. McDonnell*, 418 U.S. 539, 557–58 (1974).  Plaintiff appealed the results of his disciplinary proceeding through to the state Court of Appeals.

(5) Defendant Knowlin is also liable for Plaintiff's due process violations as he failed to correct them on administrative appeal.  *See Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986) (suggesting possible liability where "[a] supervisory official, after learning of the [constitutional] violation through a report or appeal, may have failed to remedy the wrong."); *Hill v. Marshall*, 962 F.2d 1209, 1213–14 (6th Cir. 1992) (finding warden possibly liable for plaintiff's constitutional violations where "[h]is failure to do his job resulted directly in a violation of the plaintiff's" constitutional rights).

(6) As part of his disciplinary sanctions, Defendant Brown ordered that Plaintiff wear a "pink jumpsuit" for 90 days.  After Plaintiff refused to don the jumpsuit, Defendants Jones, Cooper, Parker, Mattias, Larry, Tomlin, Sharpe, Coleman, Kelly, and Chavlva lifted Plaintiff, while in full restraints and wearing only undershorts, and carried him to a different cell.  Plaintiff claims that this incident violated his Eighth Amendment right to

4

be free from cruel and unusual punishment. Plaintiff filed a grievance regarding this instance and appealed its dismissal through to the state Court of Appeals.

(7) During the time Plaintiff wore the pink jumpsuit, he was restricted to his cell from 4:00 p.m. through 4:00 a.m., although this restriction was not part of his disciplinary sanctions nor set forth in prison policy. Plaintiff claims this additional punishment constituted "double jeopardy."

(8) While wearing the pink jumpsuit, Defendants Knowlin and Sharpe prevented Plaintiff from attending religious services. He claims that this restriction was a violation of his First and Fourteenth Amendment rights.

(9) On March 15, 2012, Plaintiff requested "protective custody due to fear for [his] life by staff." (ECF No. 1 at [24].) After being in "SMU lock up" for four days, Defendants Pack and Coleman came to return Plaintiff to general population. Plaintiff refused because he was still in fear of staff. Defendant Pack ordered him to back up to the door in order to be placed in restraints, and Plaintiff complied. Plaintiff exited the cell and started down the hallway, but then sat on the floor. Defendant Pack ordered Plaintiff to stand and, when Plaintiff refused, Defendant Coleman sprayed "SMU Fogger #1 MK-9" into his face. (*Id.* at [26].) Then Defendants Driffin, Staggers, Smith, Hunter, Lewis, and Williams picked up Plaintiff, placed him on a gurney, and took him to a cell. Plaintiff claims that this incident constituted cruel and unusual punishment. Plaintiff signed a form refusing protective custody "out of fear" after being threatened by Defendants Sharpe, Coleman, and Kelly. (*Id.* at [27].)

(10) Plaintiff alleges that each Defendant is responsible for the intentional infliction of emotional distress.

5

Plaintiff asks that this Court issue a declaratory judgment that Defendants have violated his United States Constitutional and federal rights, and for compensatory and punitive damages against each Defendant, his cost in this suit, and "[a]ny additional relief this Court deems just[,] proper, and equitable." (*Id.* at [32].)

Applicable Law and Analysis

A legal action under 42 U.S.C. § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state or federal law. *West v. Atkins*, 487 U.S. 42, 48 (1988). A plaintiff must also affirmatively show that a defendant acted personally in the deprivation of his or her constitutional rights. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). When a complaint contains no personal allegations against a defendant, that defendant is properly dismissed. *See Hallman v. Metts*, 6:10-2518-RMG-KFM, 2012 WL 444055, at *5 (D.S.C. Jan. 19, 2012).

*Inmate Grievance System*

As to paragraphs numbered one through three above, Plaintiff sets forth no cause of action. Defendant Knowlin was under no constitutional duty to address Plaintiff's grievances because "[t]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)); *see also*

6

*Blagman v. White*, 112 F. Supp. 2d 534, 542 (E.D. Va. 2000) (inmate has no constitutional entitlement to grievance procedure). Even assuming that the defendants violated their own grievance procedures, such actions do not state a claim which is actionable under § 1983. *See Brown v. Dodson*, 863 F. Supp. 284, 285 (W.D. Va. 1994).

*False Charges/Retaliation*

Retaliation against an inmate for the exercise of a constitutional right may state a claim. *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978). Retaliation by an official is actionable even if the act would have been proper if taken for different reasons. *ACLU v. Wicomico Cnty.*, 999 F.2d 780, 785 (4th Cir. 1993). In order to state a retaliation claim, the complainant "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams,* 40 F.3d at 75. Thereafter, the inmate must also demonstrate that he suffered some adverse impact or actual injury. *Wicomico Cnty.*, 999 F.2d at 785–86 (citing *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990)).

A plaintiff must provide facts that show the exercise of his constitutional right was a substantial factor motivating the retaliation. *See, e.g.*, *Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996). Further, the plaintiff must allege specific facts supporting his claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension. *Id.* Conclusory allegations of retaliation are insufficient to support his claim or establish the necessary element of adversity. *Id.* Moreover, claims of retaliation are treated with skepticism in the prison context. *Id.* at 1317.

7

Plaintiff complains that Defendant Roark filed false charges against him in retaliation for Plaintiff making reports against Roark.  However, the act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights.  *See Freeman v. Rideout*, 808 F.2d 949, 952–53 (2d Cir. 1986) (holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"); *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984) (finding that, so long as prison officials provide a prisoner with the proper procedural requirements, the prisoner has not suffered a constitutional violation).

Plaintiff further alleges that Defendant Roark engaged in retaliatory conduct against him because Plaintiff reported Roark's wrongful actions to "higher staff," but Plaintiff so reporting implicates no constitutional right.  *See Adams*, 40 F.3d at 75.  Further, Plaintiff has not alleged that he was physically injured by Defendant Roark.  While Plaintiff claims that he incurred disciplinary sanctions as a result of the false charges, as discussed below, these sanctions are not themselves constitutional violations.  Hence, Defendant Roark did not violate Plaintiff's constitutional rights, even if the charges he filed were false, and even if in retaliation.

*Conditions of Confinement*

With regard to paragraph seven above, Plaintiff suffered no constitutional deprivation when confined to his cell from 4:00 p.m. through 4:00 a.m.  To succeed on any Eighth Amendment claim regarding conditions of confinement, a prisoner must prove:  (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2)

subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). In order to demonstrate an extreme deprivation, an individual "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *See Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). Without such showing, a plaintiff must demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions. *See Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997) (citing *Helling v. McKinney*, 509 U.S. 25, 33–35 (1993)).

In *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464 (4th Cir. 1999), the Fourth Circuit Court of Appeals held that ordering a group of inmates to long-term segregated confinement did not violate their Eighth Amendment rights. The inmates complained that they were confined to their cells for twenty-three hours per day without radio or television; received only five hours of exercise per week; and were barred from participation in prison work, school, or study programs. *Id.* at 471. The court determined, however, that their alleged damages of depression and "great stress" causing them "great emotional and physical suffering" did not constitute the "extreme deprivation" required to make out a conditions-of-confinement claim. *Id.* at 471–72. Here, Plaintiff has failed to present any evidence of a serious physical or emotional injury; accordingly, such claim fails.

*Double Jeopardy*

Additionally, Plaintiff's restriction to his cell between the hours of 4:00 p.m. and 4:00 a.m. does not state a claim of "double jeopardy." The Double Jeopardy Clause

of the Fifth Amendment provides, "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. In articulating the scope of the Double Jeopardy Clause, the Supreme Court has stated:

> We have long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, "'in common parlance,'" be described as punishment. The Clause protects only against the imposition of multiple *criminal* punishments for the same offense, and then *only when such occurs in successive proceedings.*

*Hudson v. United States*, 522 U.S. 93, 98–99 (1997) (second emphasis added) (citations omitted). Accordingly, courts have concluded that the Double Jeopardy Clause does not apply to prison disciplinary actions. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution ...."); *see also Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006) (citation omitted) (finding it well-established that prison disciplinary sanctions do not implicate the Double Jeopardy Clause); *Porter v. Coughlin*, 421 F.3d 141, 146–49 (2d Cir. 2005) (using the framework articulated in *Hudson* to determine whether prison disciplinary proceedings are criminal sanctions for purposes of double jeopardy analysis and concluding that the prison disciplinary proceeding at issue presented no violation of the Double Jeopardy Clause). Moreover, there is no indication that Plaintiff underwent more than one proceeding with regard to the subject disciplinary charge. *See Anderson v. Padula*, No. 0:05-3029-PMD, 2006 WL 1075003, at *4 (D.S.C. Apr. 19, 2006) (concluding the Double Jeopardy Clause was not implicated when the plaintiff was sanctioned twice for one prison disciplinary charge). Accordingly, Plaintiff's allegations do not implicate the Double Jeopardy Clause.

*Excessive Force*

As to Plaintiff's allegations in paragraph eight above, the Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To succeed on any Eighth Amendment claim for cruel and unusual punishment, again, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298–304; *Williams*, 77 F.3d at 761. In *Hudson*, the United States Supreme Court held that whether the prison disturbance is a riot or a lesser disruption, corrections officers are required to balance the need to restore discipline through the use of force against the risk of injury to inmates. 503 U.S. 1. The Court stated, "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6–7.

The Fourth Circuit Court of Appeals applies the following factors when analyzing whether a prison official used force in good faith and not maliciously or sadistically: (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, (4) any efforts made to temper the severity of a forceful response, and (5) the absence of serious injury. *Williams*, 77 F.3d at 762 (citing *Hudson*, 503 U.S. at 7). In *Wilkins v. Gaddy*, ___ U.S. ___, 130 S. Ct. 1175 (2010), the United States Supreme Court held that the use of excessive physical force against a prisoner may constitute cruel and

unusual punishment even when the inmate does not suffer serious injury. *Id.* at 1177–78 (citing *Hudson*, 503 U.S. at 4). However, the Court noted that the absence of serious injury may be one factor to consider in the Eighth Amendment inquiry as it may suggest "'whether the use of force could plausibly have been thought necessary in a particular situation,'" and may indicate the amount of force applied. *Id.* at 1178 (quoting *Hudson*, 503 U.S. at 7).

In his complaint, Plaintiff alleges that he was carried, while in full restraints and clad only in undershorts, from one unit to another, after he refused an order from an officer. The court finds that these facts could not lead a rational trier of fact to find for Plaintiff on his claim of excessive force against these officers. *Cf. Wilkins*, ___ U.S. at ___, 130 S. Ct. at 1178 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim."). Plaintiff fails to claim that he suffered *any* physical injury, or that the correctional officers intended any physical harm. The absence of injury demonstrates that the officers used restraint in handling Plaintiff and used minimal, if any, force. Further, because Plaintiff has not suffered a serious physical injury, he cannot recover damages for related mental or emotional injury. *See* 42 U.S.C. § 1997e(e) (barring a prisoner suit for mental or emotional injury "without a prior showing of physical injury").

This same conclusion applies to Defendants Driffin, Staggers, Smith, Hunter, Lewis, and Williams, who, in the claim set forth in paragraph nine, *supra*, simply picked up Plaintiff, placed him on a gurney, and took him to a cell. Plaintiff fails to allege that these Defendants acted with the intent to cause harm or that their actions resulted in any physical

injury.  As Plaintiff alleges only that Defendant Pack placed him in restraints, Plaintiff has stated no possible claim against this defendant.

Further, Plaintiff has no possible claim against Defendants Sharpe, Coleman, and Kelly for any perceived threats against him.  It is well settled that alleged verbal confrontations, accusations or threats, without more, are not actionable under § 1983. "The use of vile and abusive language is never a basis for a civil rights action."  *Sluys v. Gribetz*, 842 F. Supp. 764, 765 n.1 (S.D.N.Y.), *aff'd*, 41 F.3d 1503 (2d Cir. 1994).

*Heck v. Humphrey*

At this time, Plaintiff is barred from recovering monetary damages with regard to his disciplinary proceeding.  A prisoner

> may not recover damages under § 1983 for an "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," without first having that conviction or sentence reversed, expunged, or called into question by issuance of a writ of habeas corpus.

*Gibbs v. S.C. Dep't of Prob., Parole, & Pardon Servs.*, No. 97–7741, 1999 WL 9941, at *2 (4th Cir.1999) (quoting *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994)).  In *Edwards v. Balisok*, 520 U.S. 641, 645–47 (1997), the United States Supreme Court specifically extended the *Heck* reasoning to the context of procedural deficiencies in inmate disciplinary convictions.

Here, Plaintiff's claim for declaratory relief and monetary damages based on allegations of false accusations and procedural defects in his hearing, if established, would necessarily imply the invalidity of the conviction.  Plaintiff, however, has admitted that his

13

efforts to overturn his disciplinary conviction have thus far failed.  Accordingly, this claim is not yet cognizable under § 1983.

*Personal Allegations and Supervisory Liability*

As to Defendant Byars, the Director of the South Carolina Department of Corrections, Plaintiff makes no allegations that he was personally involved in any of the above events.  In § 1983 actions, liability "will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).  To the extent Plaintiff attempts to hold this defendant liable in his supervisory capacity, the doctrine of *respondeat superior* generally is inapplicable to § 1983 suits.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Vinnedge*, 550 F.2d at 928–29.  The § 1983 plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate:  (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury.  *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).  Plaintiff here has failed to make such a showing as to Defendant Byars.

*Declaratory Relief*

On these facts, Plaintiff is also barred from a grant of declaratory judgment, as he does not seek declaratory relief in the true legal sense.  *See* Fed. R. Civ. P. 57; 28

14

U.S.C. § 2201.  Plaintiff asks this court for "a declaration that the acts and omissions described [in the complaint] violated Plaintiff's rights under the Constitution and Laws of the United States."  (ECF No. 1 at [31].)  "Declaratory judgments, however, are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct," and "not meant simply to proclaim that one party is liable to another."  *Johnson v. McCuskey*, 72 F. App'x 475, 477 (7th Cir. 2003).  Thus, to the extent Plaintiff seeks a declaration that the defendants' past behavior constituted a violation of his rights, he is not entitled to such relief.

<u>Recommendation</u>

It is recommended that the complaint herein be summarily dismissed, without prejudice and without issuance and service of process, as to defendants Byars, Sharpe, Roark, Kelly, Chavlva, Pack, Mack, Driffin, Tomlin, Larry, Jones, Cooper, Parker, Mattias, Staggers, Williams, Smith, Hunter, and Lewis.  The Complaint should be served on the remaining defendants, i.e., Defendants Knowlin, Brown, and Coleman, due to outstanding claims with regard to Plaintiff's complaints about his disciplinary hearing (paragraphs numbered four and five, *supra*); his inability to attend religious services (paragraph numbered eight, *supra*); and the administration of chemical spray by Defendant Coleman (paragraph numbered nine, *supra*).

January 18, 2013                                      s/ Kevin F. McDonald
Greenville, South Carolina                     United States Magistrate Judge

*Plaintiff's attention is directed to the important notice on the next page.*

15

**Notice of Right to File Objections to Report and Recommendation**

      The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

      Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington Street, Room 239
Greenville, South Carolina  29601

      **Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).