IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Arthur Lee Warren, ) | |
| ) | Civil Action No. 6:12-3187-DCN-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Director William R Byars Jr, Warden ) | |
| Gregory T Knowlin, Major Kennth Sharp,) | |
| DHO Captain Angela Brown, Officer ) | |
| George H. Roark, Captain Kevin ) | |
| Coleman, Captain Jannie Kelly, ) | |
| Richard Chaulva, Captain Lee Pack, ) | |
| Captain Mack, Lieuteant Cedric Driffin, ) | |
| Lieutenant Tomlin, Lieutenant Larry, ) | |
| Sergent Jones, Sergent Cooper, Officer ) | |
| Parker, Officer Mattias, Sergent Edward ) | |
| Staggers, Sergent Natoshia Williams, ) | |
| Cpl Franklin Smith, Officer Anton ) | |
| Hunter, and Officer Jerrol Lewis, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 38). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the district court.

On January 18, 2013, the undersigned issued a Report of Magistrate Judge recommending that the plaintiff's complaint be summarily dismissed without issuance and service of process as to defendants Byars, Sharpe, Roark, Kelly, Chaulva, Pack, Mack, Driffin, Tomlin, Larry, Jones, Cooper, Parker, Mattias, Staggers, Williams, Smith, Hunter, and Lewis (doc. 26). The undersigned authorized service of process as to defendants Knowlin, Brown, and Coleman, with regard to the plaintiff's complaints regarding denial of

due process in his disciplinary hearing, his inability to attend religious services, and the administration of chemical spray by defendant Coleman (docs. 26, 27). That recommendation is currently pending before the Honorable David C. Norton, United States District Judge.

On March 28, 2013, the defendants filed a motion for summary judgment (doc. 38). On March 29, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), this court advised the plaintiff of the motion for summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. On April 26, 2013, the plaintiff filed his response in opposition to the motion for summary judgment (doc. 48). On September 4, 2013, the undersigned granted in part the plaintiff's motion to compel and directed the defendants to provide the plaintiff with responses to certain discovery requests by September 18, 2013. This court further ordered that the plaintiff could then supplement his response in opposition to the motion for summary judgment if he so wished by October 2, 2013 (doc. 50). This court later extended the plaintiff's deadline to November 29, 2013 (doc. 57). The plaintiff did not file a supplemental response to the motion for summary judgment.

## **FACTS PRESENTED**

The events underlying the plaintiff's complaint arose while he was a prisoner at Turbeville Correctional Institution, a facility of the South Carolina Department of Corrections ("SCDC"). He is currently incarcerated at Ridgeland Correctional Institution.

On January 3, 2011, the plaintiff was charged with Offense 854, Exhibitionism and Public Masturbation, by Correctional Officer George H. Roark (doc. 38-5, incident report). On January 12, 2011, the plaintiff was notified of his disciplinary hearing, which was held on January 18, 2011. The Disciplinary Hearing Officer ("DHO"), defendant Angela Brown, noted on the disciplinary report and hearing record that no witness was called because the plaintiff stated he did not want the inmate who showed up for the hearing to testify. The report also states that the plaintiff pleaded not guilty but was found guilty based on the incident report and testimony of the officer (doc. 38-4, disciplinary report and hearing

record; doc. 38-5, incident report).  As part of his disciplinary sanctions, DHO Brown ordered that the plaintiff wear a pink jumpsuit for 90 days (doc. 38-4, disciplinary report and hearing record).

The plaintiff filed a step one grievance on January 24, 2011, requesting that DHO Brown's decision be reversed.  The Warden responded on February 3, 2011, and stated that he had reviewed pertinent documentation and conducted an investigation of the hearing and found no technicalities, procedural errors, or misinterpretations of evidence and that the decision of the DHO was based on substantial evidence, and therefore his appeal was denied (doc. 38-6, step one grievance).

The plaintiff filed a step two grievance on February 28, 2011.  On April 13, 2011, the grievance was denied as sufficient evidence was presented to warrant the plaintiff's conviction, and there was no reason found to reverse the DHO's decision (doc. 38-7, step two grievance).

On March 15, 2012, the plaintiff requested "protective custody due to fear for [his] life by staff" (doc. 1, comp. at 24).  After being in the Special Management Unit ("SMU") for four days, defendants Pack and Coleman came to return the plaintiff to general population.  The plaintiff refused, claiming he was still in fear of staff.  Defendant Pack ordered the plaintiff to back up to the door in order to be placed in restraints, and the plaintiff complied.  The plaintiff exited the cell and started down the hallway, but then sat on the floor.  Defendant Pack ordered the plaintiff to stand, and when the plaintiff refused, defendant Coleman sprayed "SMU Fogger #1 MK-9" into his face (*id.* at 25-26).  Defendants Driffin, Staggers, Smith, Hunter, Lewis, and Williams then picked up the plaintiff, placed him on a medical gurney, and took him to a cell (*id.* at 26).  Captain Kevin Coleman states in his affidavit that the plaintiff was examined by medical following the administration of chemical munitions to the plaintiff's face (doc. 38-3, Coleman aff.).  The plaintiff claims that this incident constituted cruel and unusual punishment.

On March 21, 2012, the plaintiff filed a step one grievance related to his forced removal from the SMU and placement back in general population (doc. 38-8, step

3

one grievance). The Warden investigated the incident and stated that Captain Pack and Captain Coleman acted appropriately when the plaintiff refused to exit his cell in SMU to be placed back on the yard. A forced cell movement team was ordered to escort him. Medical was informed and Nurse Edgeworth arrived to verify force could be used. After the verification, Captain Pack gave the inmate another opportunity to stand up and he refused. Captain Pack directed Captain Coleman to administer chemical munitions to the facial area. The plaintiff was then escorted out of SMU and placed in cell confinement where he was again seen by medical staff immediately following the incident. The Warden noted that by failing to obey a directive, the forced cell movement was in compliance with use of force policy (*id.*).

Warden Knowlin states in his affidavit that inmates who are convicted of a sexual offense and wearing a pink jumpsuit are not precluded from attending religious services; however, they are not allowed to attend religious services with female volunteers, which is done for the protection of the volunteers. However, services with all male volunteers are allowed. In addition, such inmates are not prevented from religious observances in their cell, and the prison chaplain is available anywhere in the prison if they request his presence (doc. 38-2, Warden Knowlin aff.).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### *Disciplinary Hearing*

The plaintiff alleges that defendant Brown denied him due process in the conduct of his disciplinary hearing by refusing to call his witnesses, failing to provide a meaningful explanation of the finding of guilt, and finding him guilty when there was no evidence to support the charge against him (doc. 1, comp. at 16-18). He further alleges that defendant Knowlin is liable for the due process violations because he failed to correct them on administrative appeal (*id.* at 19).

Prisoners are entitled to certain procedural protections in disciplinary proceedings where they face the possible loss of good conduct credits. *See Wolff v. McDonnell*, 418 U.S. 539, 564-65 (1974). The minimum required protections are: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary

evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 454-55 (1985) (citing *Wolff*, 418 U.S. at 563-67). Furthermore, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence in the record." *Id.* at 454-55. The "some evidence" standard is a lenient one, requiring no more than a "modicum of evidence," and is met if there is any evidence in the record that could support the decision. *Id*. at 455–56. This standard requires "only that the decision not be arbitrary or without support in the record." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir.1999). As the Supreme Court noted in *Hill*, "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." 472 U.S. at 455–56.

Here, the plaintiff suffered no loss of good time credits, only privileges. He received advance written notice of the charges as evidenced by his signature on January 12, 2011 (doc. 38-4, disciplinary report and hearing record). The plaintiff argues that he wished for several staff members (Major Sharpe, Captain Coleman, and Captain Mack) to be present at his disciplinary hearing (*see* doc. 1-1 at 3, request to staff member). The plaintiff received a response from DHO Brown stating that he could only have one witness, who was apparently another inmate the plaintiff had requested be present (*see id.*). On the disciplinary report and hearing record, DHO Brown noted that no witness was called because the plaintiff stated he did not want the inmate who showed up for the hearing to testify (doc. 38-4, disciplinary report and hearing record). Notably, the Supreme Court recognized in *Wolff* that courts must allow officials some degree of flexibility to refuse to call witnesses for several reasons. The Court recognized the need for swift punishment, the necessity of keeping hearings within reasonable limits, and the need to maintain authority. The Court also recognized that officials could refuse to hear witnesses because of irrelevance of testimony, lack of necessity, and hazards in particular cases. *See Wolff*, 418

U.S. at 566-67.  Here, there has been no showing that the staff members the plaintiff requested be present at the hearing could have provided testimony relevant to the charge or that their testimony would have changed the outcome of the disciplinary hearing.

Furthermore, DHO Brown provided a written statement of the evidence relied on and the reasons for the disciplinary action.  DHO Brown noted that she relied on the offense report in finding the plaintiff guilty (doc. 38-4, disciplinary report and hearing record). In sanctioning the plaintiff to wear a pink jumpsuit for 90 days and loss of certain privileges for 180 days, with no loss of good time credits, DHO Brown noted that this was the plaintiff's first charge of this nature (*id.*).  In the incident report, Correctional Officer Roark stated that, while he was doing a security check, he observed the plaintiff masturbating in his cell (doc. 38-5, incident report).  Based upon the foregoing, the undersigned finds that the procedural requirements of *Wolff* were satisfied and substantive due process was satisfied as the disciplinary hearing decision was based upon "some evidence in the record."

Based upon the foregoing, summary judgment should be granted on this claim.

### *Religious Services*

The plaintiff next alleges that while wearing the pink jumpsuit as punishment for the offense described above he was prevented from attending religious services in violation of his First and Fourteenth Amendment rights (doc. 1, comp. at 24).  Warden Knowlin states in his affidavit that an inmate who has been convicted of a sexual offense and is wearing a pink jumpsuit is not precluded from attending religious services; however, the inmate is not allowed to attend religious services with female volunteers, which is done for the protection of the volunteers.  However, services with all male volunteers are allowed. In addition, such inmates are not prevented from religious observances in their cell, and the prison chaplain is available anywhere in the prison if an inmate requests his presence (doc. 38-2, Warden Knowlin aff.).  The plaintiff counters that inmates who have been convicted of a sexual offense and must wear pink jumpsuits are locked in their cells from 4:00 p.m.

to 4:00 a.m. every day and thus may not attend any afternoon religious activities (doc. 48, pl. resp. m.s.j. at 4).

Inmates "clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). However, inmates' First Amendment rights must be balanced with the security and administrative needs of the prison in which they are incarcerated. *Id.* at 348-49. Therefore, "a prison regulation that abridges inmates' constitutional rights is 'valid if it is reasonably related to legitimate penological interests.'" *Lovelace v. Lee*, 472 F.3d 174, 199 (4th Cir.2006) (quoting *Turner v. Safley*, 482 U.S. 78, 84 (1987). To determine whether a prison regulation or policy is reasonably related, the Supreme Court has set out four factors for consideration: (1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest; (2) whether the inmate has an alternative means of exercising the right in question; (3) what impact the requested accommodation would have on prison officials, staff, other inmates, and prison resources; and (4) whether easy and obvious alternatives exist that indicate that the regulation is an exaggerated response by prison officials. *See Turner*, 482 U.S. at 89-92. The inmate has the burden of proof to disprove the validity of the regulation pursuant to the *Turner* analysis. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

Considering the *Turner* factors here, Warden Knowlin states in his affidavit that restricting inmates wearing the pink jumpsuits from attending religious activities that have female volunteers is necessary for protection of the volunteers once an inmate has shown a tendency to commit a sexual offense (doc. 38-2, Knowlin aff.). Moreover, other courts have found that movement restrictions during certain times of day for inmates subject to the pink jumpsuit policy serve a legitimate penological purpose by limiting these inmates' access and exposure to female staff and visitors and reducing the security threat and administrative burden for increased supervision of these inmates. *See, e.g., Wallace v. Cohen*, No. 8:10-cv-2856-CMC-JDA, 2011 WL 5025213, at *5 (D.S.C. Sept. 27, 2011)

(considering *Turner* factors with regard to inmate's pink jumpsuit policy Equal Protection claim), *R&R adopted by* 2011 WL 5025328 (D.S.C. Oct. 21, 2011).

Furthermore, the plaintiff has alternative means of exercising his religious beliefs as he would not be prevented from attending religious services that occur before 4:00 p.m. and that do not have female volunteers. He also would not be prevented from religious observances in his cell, and the prison chaplain is available anywhere in the prison if the plaintiff requests his presence (*see* doc. 38-2, Warden Knowlin aff.). Also, accommodating the plaintiff's asserted constitutional rights would negatively impact guards, other prisoners, and volunteers, and no alternatives to the policy have been shown to be effective.

Based upon the foregoing, summary judgment should be granted on this claim.

## *Excessive Force*

The plaintiff asserts that he was subjected to excessive force in violation of his Eight Amendment rights on March 19, 2012, when defendant Coleman sprayed him with chemical munitions during a forced cell movement (doc. 1, comp. at 24-26). The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The objective component focuses not on the severity of any injuries inflicted, but rather on "the nature of the force," which must be "nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). The objective component can be met by "the pain itself," even if the prisoner has no "enduring injury." *Williams*, 77 F .3d at 762 (internal quotation marks omitted). Regarding the subjective component, the key question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose

of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (internal quotation marks omitted); *see Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008).

The Fourth Circuit Court of Appeals applies the following factors when analyzing whether a prison official used force in good faith and not maliciously or sadistically: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321. In *Wilkins v. Gaddy*, the United States Supreme Court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even when the inmate does not suffer serious injury. 559 U.S. 34, 36-40 (2010) (citing *Hudson*, 503 U.S. 1, 4 (1992)). However, the Court noted that the absence of serious injury may be one factor to consider in the Eighth Amendment inquiry as it may suggest "'whether the use of force could plausibly have been thought necessary in a particular situation'" and may indicate the amount of force applied. *Id.* at 37 (quoting *Hudson*, 503 U.S. at 7).

Regarding the deployment of mace in correctional facilities, generally, "it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir.1984). Accordingly, courts closely scrutinize its use, evaluating the "totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas was used [to] determin[e] the validity of the use ... in the prison environment." *Bailey v. Turner*, 736 F.2d 963, 969 (4th Cir.1984). Applying this totality of the circumstances approach, the Fourth Circuit has found that mace can be used constitutionally in small quantities to "prevent riots and escapes" or to control a "recalcitrant inmate." *Landman v. Peyton*, 370 F.2d 135, 138 n.2 (4th Cir.1966).

Here, the evidence shows that defendant Pack ordered the plaintiff to back up to the door of his cell in order to be placed in restraints, and the plaintiff complied. The plaintiff exited the cell and started down the hallway, but then sat on the floor. Defendant Pack ordered the plaintiff to stand, and when the plaintiff refused, defendant Coleman

10

sprayed "SMU Fogger #1 MK-9" into his face (comp. at 25-26; doc. 1-2, incident report). The plaintiff was then picked up by defendants Driffin, Staggers, Smith, Hunter, and Lewis, placed on a medical gurney, and taken to a cell (comp. at 26; doc. 1-2, incident report). Captain Kevin Coleman states in his affidavit that the plaintiff was examined by medical following the administration of chemical munitions to the plaintiff's face (doc. 38-3, Coleman aff.).  While the defendants argue that only the amount of force necessary to remove the plaintiff was utilized with enough manpower to insure the safety of the officers and the inmate (doc. 38-1, def. m.s.j. at 8), they do not address the fact that the plaintiff was in full restraints at the time chemical munitions were used.  The plaintiff argues that because he was in restraints and sitting on the floor, he was no physical threat to the defendants, and thus chemical munitions should not have been used (doc. 48, pl. resp. m.s.j. at 3, 6).

Here, the defendants do not appear to dispute that the objective element of an Eighth Amendment claim can be met (*see* doc. 38-1, def. m.s.j. at 8).  Viewing the evidence in a light most favorable to the plaintiff, at the time chemical munitions were used, the plaintiff was in full restraints and sitting on the floor.  The undersigned cannot say as a matter of law that the subjective element of an Eighth Amendment claim cannot be met in this case.  Furthermore, the right of a prisoner to be free from cruel and unusual punishment was clearly established long before the alleged violation in this case. Accordingly, summary judgment on the basis of qualified immunity is not appropriate. Based upon the foregoing, summary judgment should be denied as to defendant Coleman in his individual capacity on the excessive force claim.

***Eleventh Amendment Immunity***

The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted).  Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir.1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but

rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).  Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.*  The defendants are employees of the SCDC.  As a result, the defendants are entitled to Eleventh Amendment immunity to the extent the plaintiff has alleged claims for monetary relief against them in their official capacities.

## CONCLUSION AND RECOMMENDATION

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 38) be granted in part and denied in part as set forth above.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

January 8, 2014
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4$_{th}$ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 300 East Washington Street
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).