IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| ARTHUR LEE WARREN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:12-cv-03187-DCN |
| | ) | |
| vs. | ) | |
| | ) | |
| WILLIAM R. BYARS JR., *et al.,* | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

This matter is before the court on Magistrate Judge Kevin F. McDonald's Report and Recommendation ("R&R") that the court grant in part and deny in part the motion for summary judgment filed by defendants Warden Gregory T. Knowlin ("Warden Knowlin"), Disciplinary Hearing Officer Angela Brown ("DHO Brown"), and Captain Kevin Coleman ("Captain Coleman"). Plaintiff Arthur Lee Warren ("Warren"), who seeks relief for alleged constitutional violations through 42 U.S.C. § 1983, filed written objections to the R&R. The defendants have also objected to portions of the R&R. For the reasons set forth below, the court adopts the R&R and grants in part and denies in part defendants' motion for summary judgment.

## I. BACKGROUND

### A. Facts

As is appropriate on a motion for summary judgment, the court construes the facts in the light most favorable to Warren, the non-moving party. On January 3, 2011, while being housed at the Turbeville Correctional Institution, Warren was charged with exhibitionism and public masturbation by correctional Officer George H. Roark. Compl.

1

Exs. C, E. On January 12, 2011, Warren was notified that a disciplinary hearing would be held on January 18, 2011. Defs.' Mot. Summ. J. Ex. 4. Upon notification of his disciplinary hearing, Warren requested that Major Sharpe, Captain Coleman, and Captain Mack be present. Compl. Ex. D. DHO Brown notified Warren that he would only be allowed to have one witness present. Compl. Ex. D. At the disciplinary hearing, Warren declined to call his witness, inmate Sam Cotton. Compl. Ex. D; Defs.' Mot. Summ. J. Ex. 4. Warren pled not guilty to exhibitionism and public masturbation, but DHO Brown found him guilty based on Officer Roark's testimony. Defs.' Mot. Summ. J. Ex. 4. DHO Brown sanctioned Warren by requiring him to wear a pink jumpsuit for 90 days, prohibiting him from attending religious services with female volunteers, and requiring that he be confined to his cell from 4:00pm to 4:00am each day. Compl. 23-24.

Warren appealed the disciplinary hearing finding by filing a step 1 grievance on January 24, 2011. Compl. Ex. F. Warden Knowlin affirmed the hearing finding and denied Warren's grievance on February 3, 2011. Defs.' Mot. Summ. J Ex. 6. Warren then appealed Warden Knowlin's determination by filing a step 2 grievance on February 28, 2011, which was denied on April 13, 2011, citing sufficient evidence was present for a finding of guilt. Compl. Ex. G. Warren then appealed to South Carolina Administrative Law Court on April 28, 2011. Compl. Ex. H. This appeal was dismissed with prejudice on May 18, 2011. Compl. Ex. I.

On March 15, 2012, Warren requested protective custody due to "fear of [his] life by staff." Compl. 24. Warren was, accordingly, placed in the Special Management Unit ("SMU"). On March 19, 2012, Captain Lee Pack ("Captain Pack") and Captain Coleman, entered Warren's cell to return him to general population. Compl. 24-25.

Warren refused to go back to general population, citing his fear of the staff. Id. Captain Pack and Captain Coleman placed Warren in restraints walked him out of his cell. Compl. 24-25. After exiting his cell, Warren sat down on the floor in the hallway. Compl. 24-25. Captain Pack ordered Warren to stand. Compl. 26. When Warren refused to stand, Captain Coleman sprayed chemical munitions into Warren's face. Id. After he was sprayed, Warren was picked up by several corrections officers and placed on a gurney and taken to a cell. Compl. 26. Warren was examined by medical personnel after the incident. Coleman aff. ¶ 4.

On March 21, 2012, Warren filed a step 1 grievance related to his removal from SMU and placement back into the general population. Defs.' Mot. Summ. J Ex. 8. Warren did not mention the use of chemical munitions against him in the step 1 grievance. Id. Warden Knowlin found that Captain Pack and Captain Coleman acted appropriately given Warren's refusal to obey demands, and that the "force cell movement" complied with prison policy. Id. at 2. Knowlin did not specifically address the appropriateness of the use of chemical munitions against Warren while he was restrained. Id.

### B. Procedural History

Warren filed the present action on November 9, 2012. On January 18, 2013, Magistrate Judge Kevin F. McDonald recommended dismissal of all named defendants except Knowlin, Brown, and Coleman. On March 7, 2013, the court dismissed the complaint as to defendants Byars, Sharpe, Roark, Kelly, Chaviva, Driffin, Tomlin, Larry, Jones, Cooper, Parker, Mattias, Staggers, Williams, Smith, Hunter, and Lewis.

The remaining defendants filed a motion for summary judgment on March 28, 2013. The magistrate judge issued the R&R on January 8, 2014, recommending that summary judgment be granted in part and denied in part. The defendants filed their objections on January 13, 2014. Warren filed his objections on January 30, 2014. The matter has been fully briefed and is now ripe for the court's review.

## II.   STANDARDS

### A.   Objections to R&R

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985). In absence of a timely filed objection to a magistrate judge's R&R, this court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). A party's failure to object may be treated as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 150 (1985). This court may accept, reject, or modify the report of the magistrate judge, in whole or in part, or may recommit the matter to him with instructions for further consideration. 28 U.S.C. § 636(b)(1).

### B. Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor. Id. at 255.

### C. Pro Se Plaintiff

Plaintiff proceeds pro se in this case. Federal district courts are charged with liberally construing complaints filed by pro se litigants to allow the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9-10 (1980). Pro se complaints are therefore held to a less stringent standard than those drafted by attorneys. Id. Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390-91 (4th Cir. 1990).

### III.  DISCUSSION

Warren's complaint alleges that he was denied due process in his disciplinary hearing, and that, as a result of the ensuing sanctions, he was denied access to religious services in violation of his First and Fourteenth Amendment rights. Warren's complaint

5

also alleges that prison officials used excessive force against him when they sprayed him in the face with chemical munitions while he was fully restrained.

The magistrate judge recommended that summary judgment be granted in favor of defendants as to Warren's due process and access to religious services claims. The magistrate judge recommended that summary judgment be denied as to Warren's claim of excessive use of force.

Neither party has objected to the magistrate judge's findings regarding Warren's access to religious services claim.[1] As noted above, a party's failure to object may be treated as agreement with the conclusions of the magistrate judge. See Thomas, 474 U.S. at 150. The court finds no clear error in the magistrate judge's findings and therefore grants summary judgment in favor of defendants as to this claim.

What remains to be considered is whether summary judgment is appropriate on Warren's due process and excessive force claims. Warren objects to the R&R to the extent that it recommends granting summary judgment on his his due process claim. Defendants object to the R&R to the extent that it recommends denying summary judgment as to Warren's excessive force claim. The court considers the parties' objections in turn.

### A. Warren's Due Process Claim

Warren contends that the magistrate judge erred by recommending that he received sufficient procedural protections during his disciplinary hearing. Specifically, Warren contends that he was denied the ability to call witnesses on his behalf.

---

[1] Even when the court construes Warren's objections liberally, he makes no mention of his access to religious services claim.

[2] Because defendants' actions fail to satisfy the subjective component of the excessive force test,

As an initial matter, Warren's disciplinary hearing resulted only in the temporary suspension of privileges. It is not clear whether the mere loss of privileges – as opposed to the potential deprivation of a liberty interest – gives rise to the need for minimum procedural protections in disciplinary hearings. In an abundance of caution, the court nevertheless evaluates Warren's due process claim under the three-part test that has been articulated by the United States Supreme Court.

Prisoners are entitled to constitutional protections; however, those rights are limited in comparison to the rights of defendants in criminal proceedings. Wolff v. McDonnell, 418 U.S. 539, 556 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."). Minimum procedural protections are required when a prisoner may be deprived of a liberty interest under the Due Process Clause. Burnette v. Fahey, 687 F.3d 171, 181 (4th Cir. 2012). The required minimum protections are: (1) advance written notice of the disciplinary hearing; (2) an opportunity to present evidence and call witnesses on his behalf, unless doing so would be hazardous to institutional safety and correctional goals; and (3) receipt of a written statement of the factfinder as to the evidence used in their determination and the reason for the disciplinary action. Brown v. Braxton, 373 F.3d 501, 504-05 (4th Cir. 2004).

In the prison context, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Wolff, 418 U.S. at 556. Prison officials may deny witness inmates' requests regarding disciplinary hearing witnesses where "legitimate penological interests justify excluding a witness." Braxton, 373 F.3d at 505. Prison officials are not required

to explain their reason for denying a witness during a disciplinary hearing or in the administrative record. Ponte v. Real, 471 U.S. 491, 496 (1985) ("[P]rison officials may choose to explain their decision at the hearing, or they may choose to explain it 'later.'"). Prison officials have legitimate interests in keeping hearings within reasonable time limits, keeping disruption within the prison to a minimum, and maintaining authority. Wolff, 418 U.S. at 566-67. Allowing officials discretion to limit witnesses preserves these legitimate interests. Id.

In this case, Warren was given advance written notice of the disciplinary hearing and of the alleged offense. Defs.' Mot. Summ. J Ex. 4. Warren sent DHO Brown a request to have Captain Mack, Captain Coleman, and Major Sharpe present at his hearing, to which Officer Brown responded that he could call only one witness, another inmate. Compl. Ex. D. DHO Brown later noted in the hearing record that Warren did not call as a witness the inmate that he asked to be at the hearing. Compl. Ex. D. Allowing Warren to call three different prison officials – none of whom witnessed nor had any involvement in the incident – would unnecessarily prolong the hearing process, undermine authority, and hinder institutional safety and correctional goals. It was not improper for DHO Brown to refuse Warren's request for these witnesses. Additionally, Warren does not contend that the testimony of these three officials would have changed the outcome of the hearing. The procedural protections set forth in Wolff were satisfied as to Warren's disciplinary hearing, therefore defendants cannot be found to have violated Warren's due process rights.

Because Warren received sufficient due process in his disciplinary hearing, the court adopts the magistrate judge's recommendation and grants summary judgment in favor of defendants as to this claim.

### B. Warren's Excessive Force Claim

Defendants object to the magistrate judge's recommendation that summary judgment be denied on Warren's excessive force claim. Specifically, they contend that the use of force and deployment of chemical munitions against Warren were justified in the situation, and that the mere presence of restraints is insufficient to deem the force excessive.

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In determining whether a complaint states an Eighth Amendment claim that a defendant used excessive force, the core judicial inquiry does not concern the extent of the injury but rather the nature of the force: "specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 39 (2010) (quoting Hudson, 503 U.S. at 7).

To prove a claim that prison officials violated his constitutional rights through the excessive use of force, an inmate must satisfy two requirements. First, a claimant must meet a "heavy burden" to satisfy the subjective component, Whitley v. Albers, 475 U.S. 312, 321 (1986), for which the claimant must show that the force used by the corrections officers "inflicted unnecessary and wanton pain and suffering." Hudson v. McMillian, 503 U.S. 1, 6 (1993). In the context of a prison disturbance, this question "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline

or maliciously and sadistically for the very purpose of causing harm.'" Id. (quoting Whitley, 475 U.S. at 320-21).

> When evaluating evidence to determine whether it is legally sufficient to satisfy the subjective component, a court may allow an inmate's claim to go to the jury only if it concludes that the evidence, viewed in a light most favorable to the claimant, will support a reliable inference of wantonness in the infliction of pain.

Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998) (internal quotations omitted). Factors relevant to this determination include (1) the need for application of force; (2) the relationship between that need and the force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 320-21.

Second, the claimant must meet the objective component, which concerns whether the alleged wrongdoing is objectively "harmful enough" to establish a constitutional violation. Hudson, 503 U.S. at 2. "The core judicial inquiry . . . [is] not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain and restore discipline, or maliciously and sadistically to cause harm." Wilkins, 559 U.S. at 37 (internal quotation marks omitted). The objective component is not as demanding because "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . ." Id. (internal quotation marks omitted).

In this case, Captain Coleman used chemical munitions against Warren while he was fully restrained. Defendants contend that the chemical munitions were deployed in good-faith and to restore order. However, defendants have failed to demonstrate that there were no viable alternative means that did not require use of force. They have

10

explained neither why it was necessary to administer chemical munitions to a fully-restrained inmate, nor what harm, if any, Warren posed to them. As a result, it is unclear whether defendants' actions satisfy the subjective component of the excessive force test.[2] Summary judgment is inappropriate on this claim.

## IV.   CONCLUSION

Based on the foregoing, the court **ADOPTS** the magistrate judge's R&R and **GRANTS IN PART AND DENIES IN PART** defendants' motion for summary judgment. Specifically, the court grants summary judgment as to plaintiff's due process and access to religious services claims, but denies summary judgment as to plaintiff's excessive force claim.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 31, 2014**
**Charleston, South Carolina**

---

[2] Because defendants' actions fail to satisfy the subjective component of the excessive force test, the court need not consider whether their actions meet the objective component.

11